**Lisa TSARELKA, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.**

**No. 87–1587.**

United States Court of Appeals, First Circuit.

Submitted Dec. 11, 1987.

Decided March 17, 1988.

Rehearing En Banc Denied May 12, 1988.

Lisa Tsarelka, pro se.

Thomas D. Ramsey, Asst. Regional Counsel, Dept. of Health and Human Services, and Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., on brief for defendant-appellee.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

PER CURIAM.

Lisa Tsarelka (claimant) appeals from the district court's affirmance of the decision of the Secretary of Health and Human Services denying her applications for Social Security disability insurance benefits and Supplemental Security Income. The Secretary denied the applications on the basis that claimant could perform her past relevant work. We affirm.

## I.

Claimant applied for disability insurance benefits on June 8, 1981. She alleged disability due to a back problem, with an onset date of August 1, 1980. Her application was denied initially and upon reconsideration. On March 29, 1983, a hearing was held before an Administrative Law Judge (ALJ). The ALJ found that claimant did not have a "severe" impairment and, therefore, was not disabled. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c) ("step 2" of the sequential evaluation process). On August 4, 1983, the Appeals Council denied claimant's request for review. Claimant appealed to the United States District Court for the District of Massachusetts. She apparently raised there, for the first time, an allegation that she suffered from "fibrositis." On August 14, 1985, the court remanded the case to the Secretary "with instructions to obtain expert testimony relating to the plaintiff's claim that she suffers from fibrositis. *Once the Secretary has obtained this evidence,* she shall reevaluate the plaintiff's claim that she is disabled within the meaning of the Social Security Act." (emphasis in original).

A new hearing was held on July 3, 1986. Claimant, a medical advisor, and a vocational expert testified. On July 24, 1986, the ALJ found that a diagnosis of fibrositis had been established and that claimant's symptoms of fatigue, pain and functional limitations supported the vocational expert's conclusion that there were no jobs in the national economy that she could perform. He also relied on the medical advisor's testimony that claimant was disabled. The Appeals Council reversed on December 3, 1986. It found that claimant's complaints of pain, stiffness and fatigue were not credible to the extent alleged and that she could perform her past work as a secretary or bookkeeper. This became the final decision of the Secretary. On June 17, 1987, the district court (by the same judge who had remanded the matter on August 14, 1985) found that the Secretary's decision that claimant was not disabled was supported by substantial evidence.[1]

---

1. In the district court claimant had moved for emergency injunctive relief. Specifically, she requested the court to order that disability benefits be immediately awarded to her. The court referred this motion to a magistrate who recommended denial. Claimant made a timely objection to the magistrate's report. In it, she stated that she "hereby stipulates to the terms and conditions set forth" in the report. The only objection claimant made was that the "issue in question should be barred with respect to this defendant under the doctrine of res judicata...." See *supra* for a discussion of claimant's *res judicata* argument.

## II.

We review the relevant medical evidence:

In August, 1980, claimant was seen at Boston City Hospital for an injury to her right elbow. In March, 1981, claimant was diagnosed as having a fibroid tumor; the tumor was removed surgically. A note indicates that she was unable to work at this time. X-rays showed normal heart and lungs with "mild spondylosis deformans of the dorsal spine." Additional x-rays, taken on June 22, 1981, revealed no evidence of fractures, compression deformity, subluxation, dislocation, spondylolisthesis or defects in the region of the neural arches. Minimal changes of degenerative arthritis were noted, but there were no areas of decalcification, bone destruction or narrowing of the lumbar intervertebral disc spaces.

Dr. Donald Greene examined claimant on June 22, 1981. He noted her history of back, neck and leg pain for which she stated that she had last received treatment about twenty-five years ago. He noted that she stated that she could walk eight to ten blocks, take public transportation, clean her room and go out to eat. His examination revealed an alert, obese female who could sit and move about comfortably. There was no evidence of muscle spasm and she could flex 90 degrees. She could stand well on her heels and toes. He noted no weakness on flexion extension of the hips, knees and feet. Knee jerks were 1 +, ankle jerks, a trace. Dr. Greene concluded that the examination was "entirely unremarkable with regard to her locomotor neurological systems" and that there was "no restriction in her functional capacity."

A Massachusetts Department of Public Welfare report completed by Dr. Charles Brusch on July 29, 1982 indicated that claimant suffered from hypertension, sinusitis, bronchial phlegm and abdominal gas. He noted that her prognosis was "not good."

Another x-ray taken on September 13, 1982, showed no change from the June 22, 1981 x-ray. Dr. Greene also reevaluated claimant on September 13, 1982. Claimant reported to Dr. Greene that she was having trouble with her eyesight. She stated that she could still walk for eight blocks, stand for five minutes, cook, sweep, shop, vacuum and make her bed; she had trouble taking public transportation. She also complained of having difficulty swallowing when she sleeps. Her flexion was 60° at this time. Dr. Greene again concluded that there was no restriction in her functional capacity.

On February 14, 1983, Dr. Thomas P.R. Hinchey, a neurosurgeon, examined claimant. She presented with complaints of bamboo spine, spondylitis, bronchitis, severe allergies, dermatographia and double vision. On examination, claimant's ankle jerks were absent, but her gait was normal. There was no major weakness. Dr. Hinchey noted that if claimant needed evidence of bamboo spine, she should see an orthopedic surgeon.

On February 2, 1983, Dr. Bernard S. Henken, a psychologist, examined claimant. He opined that claimant was undergoing psychological turmoil and insecurity which might be related to her physical problems. If the psychological problems continued, he stated, claimant might be precluded from functioning in an occupational environment. On March 23, 1983, Dr. Henken wrote a letter to claimant's attorney. In it, he stated that the financial stress of claimant's situation affected her ability to cope generally. He noted that her stress level possibly could result in severe psychosomatic reactions.

On remand, the following additional medical evidence was considered.

On August 16, 1984, Dr. T. Scott Johnson, a physician at the Beth Israel sleep disorder unit, wrote in a pulmonary note that claimant came in with complaints of difficulty swallowing and breathing as she falls asleep. If she is able to get to sleep, she stated that she sleeps soundly for eight

In her brief on appeal, claimant now lists as an issue, but does not discuss, the denial of injunctive relief. Although claimant did not specifically object to the magistrate's recommendation concerning her request for an injunction, we find no error in the denial.

hours. She presented with no symptoms of excessive daytime somnolence. Dr. Johnson noted that claimant seemed to have a sleep-related swallowing disorder versus a sleep apnea syndrome.[2] He recommended an overnight sleep test to rule out a significant sleep apnea syndrome. There are no further records concerning this test.

On August 28, 1984, Dr. Don L. Goldenberg, a physician in the rheumatology section at Boston University Medical Center, examined claimant. He describes his findings in a letter to Dr. Johnson. He states that her chronic musculoskeletal pain syndrome best fits into a diagnosis of fibrositis. The best-studied characteristics of this disease have been sleep disturbances. Claimant reported generalized aches and pain with "sensitivity" in her back, neck, buttocks, and knees. On examination, claimant had no joint effusions, severe muscle weakness, or evidence of arthritis or myositis. She had "typical trigger tender points in the usual locations in patients with fibrositis...." Dr. Goldenberg decided not to treat claimant at the time, but gave her some reading. He told claimant that her sleep disorder could play a part in her problems. He concluded by stating that fibrositis is "a chronic painful condition which is not defined clearly as far as treatment or prognosis" is concerned.

In another letter, dated September 15, 1984, and in his deposition, Dr. Goldenberg stated that claimant's condition "could be disabling depending on the patient's response to therapy as well as the level of the patient's pain and sleep disorder." He specifically stated that he was unable to form an opinion, based on his examination of claimant, whether she was disabled. In his deposition, Dr. Goldenberg outlined the possible therapies for fibrositis: anti-inflammatory medicines, pain medicine, muscle relaxants, sleep medicine and physical therapy such as exercise programs. Dr. Goldenberg stated that he had seen approximately 120 patients suffering from fibrositis; of these, only a few could not work.

Dr. John A. Bolzan, a consultant, examined claimant on November 18, 1985. He noted her complaints of difficulty sleeping due to problems with breathing, stiffness on awakening, back pain and leg pain. His diagnostic impression was obesity, probable osteoarthritis, psoriasis and question of sleep apnea disorder. He noted that there were tender bony swellings at the fifth TIP on her left hand, and second TIP on the right. An x-ray ordered by Dr. Bolzan showed moderate to pronounced narrowing of the disc spaces in the mid to lower thoracic spine; the impression was of moderate to advanced degenerative disc disease in the mid to lower thoracic spine. Dr. Bolzan completed a Medical Assessment of Ability to do Work-Related Activities. It is mostly illegible, but seems to reflect reports of claimant's subjective complaints of pain on engaging in activities such as lifting, carrying, walking, standing and bending.

On March 18, 1986, Dr. Theoharis Seghorn, a psychologist, examined claimant. He describes claimant as a person of above-average abilities, with no signs of deterioration. He states that she has a characterological personality disorder which includes narcissistic and histrionic features. She evidenced magical thinking. He concluded that she could manage her own funds. Dr. Seghorn completed a Medical Assessment of Ability to do Work–Related Activities. He noted that claimant's reasoning and ability to make occupational and personal adjustments were not a problem. She evidenced no deterioration in personal habits. Her restrictions in daily activities were by self-report only.

At the second hearing, Dr. Kenneth A. McKusick testified. He is an internist and specialist in nuclear medicine. He first stated that fibrositis appears to be a condition that is characterized by symptoms without any specific objective physical laboratory tests to support a diagnosis. This makes it difficult, he explained, to identify. He stated that the medical evidence in the

---

2. Apnea is defined as the "transient cessation of the breathing impulse." *Dorland's Illustrated* *Medical Dictionary* (24th ed. 1965).

record—pain on pressing certain joints and the presence of a trigger finger—supported a finding that claimant has fibrositis as it is described in the literature. Dr. McKusick also pointed out that there are no medical records concerning follow-up on the sleep tests to determine whether claimant has a sleep apnea syndrome nor is there any evidence that claimant has been on any course of treatment, other than aspirin, or under the care of any doctor. He stated that there was "nothing in the evidence to suggest whether or not she has a condition that would or would not respond to therapy."

Apparently the transcript of this hearing did not contain all of Dr. McKusick's testimony due to a malfunction of the tape recorder. Claimant submitted an affidavit from Dr. McKusick indicating that he also had testified that the symptoms of claimant fit a diagnosis of fibrositis syndrome and that if she, in fact, suffers from fibrositis, her testimony is credible and her impairment is disabling.

The vocational expert testified that claimant's past work was sedentary to light and skilled. He stated that if claimant's reports of symptoms were credible, she would be precluded from performing her past work—clerical and bookkeeping jobs.

Claimant testified that she was born in 1935 and has a high school education. She stated that she had been taking aspirin for her condition but it was making her blood too thin and bursting her blood vessels. She stated that she could sit for five minutes to two hours, depending on the chair. She could stand for ten minutes without discomfort; she stated that she has trouble walking four blocks. On further exertion, she experiences exhaustion and pain in her neck, lower back and legs. She has difficulty sleeping. She has trouble carrying anything because her knee tends to buckle. She cannot squat. She has many allergies. Her eyes swell in cold weather. She does her own shopping, but gets a ride from a friend. She has trouble using public transportation. She attends church, but rarely socializes. She stated that she is not in treatment because no doctor would know what to do for her condition.

After the ALJ's decision that claimant could not perform her past relevant work, the Appeals Council sought additional medical evidence. On August 20, 1986, Dr. John D. Herman reviewed the record and concluded that claimant has the residual functional capacity to perform "light sustained activity consisting of intermittent sitting, standing and walking." On October 7, 1986, Dr. John A. Opal reviewed the evidence from a psychiatric point of view. His impression was that claimant could engage in her past clerical work. Dr. Henry Myers agreed with Dr. Opal's conclusion.

The Appeals Council reviewed the medical evidence concerning claimant. It found that claimant's complaints of pain, stiffness and fatigue were credible only to the extent that claimant is precluded from engaging in more than light exertion or from remaining in one position for a prolonged period of time. The Council pointed out that Dr. Goldenberg stated that he could not form an opinion as to disability, although he thought claimant did suffer from fibrositis. As for Dr. McKusick's testimony, the Council believed that he also did not state that claimant was disabled or that her complaints were credible. The Council pointed out that Dr. Goldenberg testified that a conclusion of disability does not necessarily follow from a diagnosis of fibrositis. Although the Council was uncertain that fibrositis is a recognized disease, it emphasized that the nomenclature used to diagnose a condition is immaterial to a finding of disability. Of particular importance to the Council was the fact that claimant had not demonstrated evidence of sleep apnea syndrome nor had she sought any treatment for her fibrositis.

### III.

Before addressing the merits of claimant's disability claims, we first dispose of claimant's argument that the Appeals Council was precluded from relying on any evidence considered by the Secretary prior to the district court remand of August 14, 1985. Specifically, claimant contends that

by remanding the matter to the Secretary, the court "upheld" claimant's contention that (1) the medical evidence submitted up until then was without merit and (2) the evidence was insufficiently "substantial" to support the first ALJ's determination that claimant did not suffer from a severe impairment. Claimant goes on to argue that because she "prevailed" on these issues, the Appeals Council, on remand, was limited by principles of *res judicata* to considering only the new medical data.

■ We disagree. The district court never addressed the substantiality of the medical evidence. Rather, it only ordered the Secretary to "re-evaluate" the evidence after taking additional information concerning claimant's fibrositis. Nothing in the remand intimates any view concerning the merits of claimant's assertion that she is disabled. It is axiomatic that *res judicata* only applies to final judgments on the merits of an action. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). Here, the court did not enter a final judgment; instead it remanded the matter for further proceedings. *Res judicata* is inapplicable in this situation. *Cf. Pauls v. Secretary of Air Force*, 457 F.2d 294, 297–98 (1st Cir.1972) (a remand is not a "final decision"). Therefore, the Appeals Council was correct in reviewing the entire record and, as a result, claimant's due process rights were not violated.

We next turn to the question whether the decision of the Appeals Council was supported by "substantial evidence." *See* 42 U.S.C. § 405(g). "We must uphold the [Appeals Council's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [its] conclusion." *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). We find that this standard has been met.

Implicit in a finding of disability is a determination that existing treatment alter-

natives would not restore a claimant's ability to work. The regulations specifically provide that "to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. §§ 404.1530(a), 416.930(a). If a claimant does not follow prescribed treatment "without a good reason," he or she will not be found to be disabled. *Id.* at §§ 404.1530(b), 416.930(b); *see Schena v. Secretary of Health and Human Services*, 635 F.2d 15, 19 (1st Cir. 1980) (applying predecessor to § 404.1530 and explaining that there must be evidence that the treatment actually would restore claimant's ability to work). Of course in this case, no treatment was ever prescribed and these regulations technically do not apply.

■ However, claimant cannot avoid the underlying purpose of requiring adherence to treatment which will allow better functioning by simply neglecting to secure a prescription for such treatment. The mere presence of a fibrositis condition does not entitle her to disability benefits. Rather, to meet her burden of demonstrating that she is unable to perform her past relevant work, claimant must also establish that her impairment is not remediable. That is, she also must follow through with securing treatment to determine what can be done to restore her ability to work. Here, Dr. Goldenberg specifically stated that a finding of disability was, in part, dependent on claimant's response to therapy. The Appeals Council relied on this statement as well as on the fact that claimant is not under the care of any doctors, in reaching its conclusion that claimant was not disabled. Although Dr. McKusick evidently stated that "if claimant has fibrositis" she is disabled, he noted that claimant was not undergoing any course of treatment and that he did not know if fibrositis would respond to therapy.

■ Given the above, we believe that there was substantial evidence to support the decision of the Appeals Council.[3] Resolution of conflicts in the evidence is for the Secretary. *Rodriguez*, 647 F.2d at 222.

---

**3.** Although claimant is not claiming disability

based on a mental condition, there also is sub-

Moreover, we must uphold the Secretary's conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987), *cert. denied*, ⸺ U.S. ⸺, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988). Even though the Appeals Council did not have the benefit of Dr. McKusick's affidavit clarifying the portion of his testimony apparently given when the tape recorder misfunctioned, there still is evidence in the record to support the Appeals Council's finding that claimant failed to carry her burden of showing that her fibrositis prevented her from performing her past work. Dr. McKusick's affidavit does not significantly impact this later basis of the Appeals Council's decision.

Claimant finally argues that the Secretary has violated section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. However, claimant cannot now raise this issue, having failed to assert it before the district court. *Knight v. Mills*, 836 F.2d 659, 664 n. 6 (1st Cir.1987).

The order of the district court is therefore

*Affirmed.*

stantial evidence to support the Secretary's conclusion that claimant is not prevented from engaging in her prior work due to any emotional impairments she may have.