46 F.3d 1114
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Zinnia Schroeder RODRIGUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 94-1868.
 United States Court of Appeals,
First Circuit.
 Feb. 7, 1995.
 
 Appeal from the United States District Court for the District of Puerto Rico [Hon. Carmen Consuelo Cerezo, U.S. District Judge ]
 Juan R. Requena Davila and Juan A. Hernandez Rivera on brief for appellant.
 Guillermo Gil, United States Attorney, Maria Hortensia Rios, Assistant United States Attorney, and Gerald Luke, Attorney, Department of Health and Human Services, on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Zinnia Schroeder-Rodriguez appeals a district court order that affirmed a decision of the Secretary of Health and Human Services that denied Schroeder- Rodriguez's claim for social security disability benefits. We affirm.
 
 I.
 
 2
 Claimant is presently 30 years old. She graduated from high school, completed additional secretarial training, and was employed as an office worker at various companies between 1982 and 1991. On December 29, 1991, claimant filed an initial application for social security benefits. She alleged that she became disabled on September 11, 1991 as a result of injuries to her neck, back, hands, and legs that she sustained in a motor vehicle accident. Claimant maintained that she had eight pinched nerves and could no longer type or run computers as a result of this accident. She also asserted that her left leg was particularly affected and that she could not move as she used to.[1]
 
 
 3
 After claimant's initial application was denied, she filed a request for reconsideration which alleged that she was disabled due to an emotional condition in addition to her physical ailments. The request was denied. Claimant then appeared with counsel at a hearing before an administrative law judge (ALJ). She testified that she could not work because she had no strength in her hands and that she also suffered nightmares as a result of the accident. She also maintained that she experienced constant body pain and could not stand, sit, or walk for more than 10-15 minutes at a time. Claimant further testified that she required assistance to bathe, comb her hair, and care for her 5-year old daughter.[2]
 
 
 4
 The ALJ denied claimant's disability claim at step five of the sequential evaluation process. He found that claimant had a combination of impairments, including cervical, dorsal, and lumbar painful syndromes and multiple nerve entrapment neuropathies, but that she did not have a medically determinable mental impairment or any significant mental limitations. He also found that her allegations of pain and other symptoms were not fully supported by the objective medical evidence and that her subjective complaints thus deserved "very little credibility." (Tr. 16-17). The ALJ found that claimant had the residual functional capacity (RFC) to perform the physical exertional and nonexertional requirements of sedentary to light work, but that she could not do frequent or continuous hand-finger activities such as typing. While the ALJ concluded that claimant could not perform her past work because it required frequent typing, he also found that her RFC was not significantly compromised by her nonexertional limitations. (Tr. 19). Given the claimant's physical RFC for sedentary to light work, younger age, education (beyond high school), and work experience (skilled), the ALJ concluded that Grid Rules 201.28 and 201.29 directed a "not disabled" finding. (Tr. 17, 19).[3] The district court summarily affirmed the ALJ's decision under 42 U.S.C. Sec. 405(g). This appeal followed.
 
 II.
 
 5
 Before we address the claimant's arguments, we review the relevant medical evidence. Shortly after the accident, claimant secured medical treatment at the Puerto Rico Compensation Administration Due to Automobile Accidents (ACAA). The record discloses that claimant sustained whiplash-like injuries after her car was hit by a Mack truck while she was en route to work on September 11, 1991. (Tr. 26, 175). X-rays taken a week after the accident revealed cervical muscle spasm. (Tr. 153). She was treated with Robaxin, a skeletal muscle relaxant. On September 18, 1991, claimant was examined by Dr. Wildo Vargas, a physiatrist affiliated with the ACAA.[4] She complained of constant headaches and pain in her neck, back, and left hip. Physical exam disclosed severe tenderness of the paracervical, trapezius, thoracic, and lumbosacral paraspinal muscles and the muscles of both arms. Her range of motion was limited. Dr. Vargas prescribed physical therapy consisting of hot packs, TENS (transcutaneous electric nerve stimulation), ultrasound, therapeutic massage, and bed rest. (Tr. 151).
 
 
 6
 Over the next two months claimant responded very little to conservative treatment. She continued to complain to Dr. Vargas of pain in her neck, back, arms, and left hip. Physical examination continued to disclose tenderness and spasm in her upper body and extremities, as well as positive Tinel's sign at both elbows.[5] Approximately five weeks after the accident, claimant complained that her neck and back pain had worsened, particularly with activity. Dr. Vargas discontinued physical therapy and ordered electromyogram (EMG) and nerve conduction velocity studies. Studies performed on November 4, 1991 revealed that claimant suffered from carpal tunnel syndrome and ulnar nerve entrapment at Guyon's canal in both upper extremities. There was also right ulnar nerve entrapment at the elbow, bilateral S-1 root irritation, and right tarsal tunnel syndrome.[6] Dr. Vargas observed that the entrapped nerves in claimant's upper extremities accounted for the neck pain that she had been experiencing and that her bilateral S-1 root irritation was the apparent cause of her back pain. (Tr. 155).[7] He referred claimant to a hand surgeon for consideration of surgical decompression of the entrapped nerves in her upper extremities. (Tr. 154). While Dr. Vargas did not assess claimant's RFC, he indicated that all of her conditions resulted in a 13% impairment of the whole person. (Tr. 156).[8]
 
 
 7
 On 3/12/92, claimant was examined by Dr. Enid Berrios, another physiatrist affiliated with the ACAA. (Tr. 141). Dr. Berrios found claimant's muscle strength was 3 out of 5 on the left upper extremity and that she exhibited decreased sensation over the C-6 and C-7 nerve distribution. Tinel's sign was positive on the left, unreported on the right. Her neck had a functional range of motion. Mild dextroscoliosis was apparent in the dorsal and levolumbar regions.
 
 
 8
 On 3/27/92, claimant was examined on behalf of the Social Security Administration (SSA) by Dr. Oscar Benitez, a neurologist. He found that claimant's mental status was alert, well oriented and cooperative, and that she was able to give a good history by herself. Physical examination disclosed no atrophy, weakness, or deficit to pinprick sensation in the upper and lower extremities. While Tinel's sign was positive in both wrists and elbows, no cervical or lumbar spasm was detected.[9] Dr. Benitez completed a detailed range of motion chart which showed that claimant suffered from no limitations except a 10 degree loss of flexion-extension in the lumbar spine. (Tr. 187-89). Relying on Dr. Vargas's EMG and nerve conduction studies, Dr. Benitez concluded that claimant suffered from cervical dorsal and lumbar painful syndrome and multiple nerve entrapment neuropathies. While he found no objective evidence of neurological deficit, his prognosis was reserved. (Tr. 185).[10]
 
 
 9
 On May 5, 1992, claimant underwent further EMG and nerve conduction studies at the request of Dr. Berrios. While Dr. Berrios's reports are largely illegible, those studies revealed that claimant suffered from early right median nerve entrapment and right C8T1 root irritability. (Tr. 129). Dr. Berrios recommended that claimant continue physical therapy and prescribed 12 visits. (Tr. 134-36). Also on 5/5/92, claimant underwent a psychiatric examination through the ACAA. In a 2- page form report that was very brief and cryptic, Dr. Manual Colon indicated that claimant had a moderate anxiety neurosis with depression that was related to her accident. He also checked off boxes which suggested that this condition partially limited claimant's ability to perform her usual work, but that she was able to perform the same type of work. (Tr. 138). Dr. Colon indicated that claimant merited psychiatric treatment and prescribed Tofranil and Buspar, anti-depression and anxiety medications. He also recommended that claimant return for reevaluation on 6/3/92. (Tr. 140). However, there are no records of any such follow-up or further psychiatric treatment.
 
 
 10
 On 5/29/92, Dr. Vargas discharged claimant from the ACAA. He indicated that claimant's neck continued to be very tender with severe spasm and that her arms were also tender. He concluded that no more physical therapy would be of help and noted that claimant had been offered surgery but refused it. (Tr. 143, 128). On 7/23/92, claimant returned to Dr. Berrios, who prescribed medications and additional physical therapy. (Tr. 120-23). A 7/24/92 x-ray revealed reversal of the cervical lordosis indicative of cervical spasm. (Tr. 119). On 8/26/92, Dr. Vargas issued a final medical report. He relied on the most recent EMG and nerve conduction studies of Dr. Berrios in concluding that claimant suffered from cervical fibromyositis, cervical radiculopathy, ulnar nerve entrapment at the elbows, carpal tunnel syndrome and lumbar radiculopathy. Dr. Vargas indicated that claimant had over 40 physical therapy treatments which were of some help when she received them but that her pain returned after the treatments. (Tr. 193). He recommended that she continue physical therapy because her neck pain persisted. (Tr. 117-18).[11]
 
 III.
 
 11
 On appeal, claimant argues that the ALJ failed to base his decision on substantial evidence on the record as a whole. She particularly faults the ALJ for finding that she has no medically determinable mental impairment. Claimant contends that this finding is not supported by substantial evidence because it: (a) was based on the report of Dr. Benitez, a consulting neurologist who was not qualified to render an opinion on psychiatric matters, and (b) disregarded the psychiatric report of Dr. Manual Colon-which indicated that claimant suffered from an anxiety neurosis. Claimant says that the ALJ further violated the Secretary's regulations by failing to complete a Psychiatric Review Technique Form (PRTF). Finally, claimant argues that the ALJ failed to give appropriate weight to her complaints of disabling pain.
 
 
 12
 The ALJ did not mention Dr. Colon's report when he concluded that claimant did not have a medically determinable mental impairment. But, contrary to the claimant's argument on appeal, the ALJ did not base this conclusion on the report of Dr. Benitez alone.[12] Rather, the ALJ based this conclusion on the results of Dr. Benitez's mental status exam, his own observations of claimant at the hearing, and, perhaps most importantly, the absence of evidence indicating that claimant suffered from any significant mental limitations. (Tr. 16). This last finding is significant, for even Dr. Colon's report does not contradict it.
 
 
 13
 Dr. Colon's report consisted of an ACAA form which contained little more that his conclusory diagnosis that claimant suffered from an anxiety neurosis. He did not identify any objective findings that supported his conclusion, nor did he relate how claimant's anxiety impaired her ability to work. Indeed, even Dr. Colon did not conclude that claimant's anxiety left her unable to work. His report suggests that claimant's anxiety resulted, at most, in a partial limitation but that she ultimately was able to perform the same type of work. (Tr. 138).
 
 
 14
 In the face of this cryptic report which contained little more than check marks, the ALJ was not required to credit Dr. Colon's diagnosis. "The ALJ need not accept an opinion of a physician-even a treating physician-if it is conclusory and brief and unsupported by clinical findings." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). See also Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). Cf. Thompson v. Sullivan, 928 F.2d 255, 258 (8th Cir. 1991)(treating physician's conclusory statements on insurance form were not entitled to more weight than opinions of other doctors).[13] Claimant was responsible for providing specific medical evidence of her alleged mental impairment and its effect on her functional capacity for work. See 20 C.F.R. Sec. 404.1508; Gray v. Heckler, 760 F.2d 369, 375 (1st Cir. 1985). She failed to meet this burden. The fact that claimant may have suffered nightmares following the accident does not establish that she was not able to work. Moreover, even if we assume that Dr. Colon's diagnosis was correct and that the ALJ erred in finding that claimant had no mental impairment, is well established that the mere existence of an anxiety disorder does not constitute a disability. See, e.g., Sitar v. Schweiker, 671 F.2d 19, 20 (1st Cir. 1982); Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975). The remaining notations in Dr. Colon's report establish that this condition was not severe. Thus, even if the ALJ erred in discounting Dr. Colon's diagnosis, the record proves that this error was harmless.[14]
 
 
 15
 We are troubled, however, by another aspect of the ALJ's decision. The ALJ concluded that the claimant was not disabled because her RFC enabled her to perform sedentary to light work. Yet he also found that claimant could not perform frequent or continuous hand-finger activities such as typing. " 'Most sedentary jobs require good use of the hands and fingers.' " Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991)(quoting SSR 83-14). See also SSR 83-10 (CE 1983)(same). If claimant cannot perform continuous hand-finger activities, she is not able to perform the full range of sedentary work. Thus, the ALJ's conclusion that claimant's nonexertional limitations did not significantly reduce claimant's RFC is not supportable. His conclusion that claimant is not disabled under Grid Rules 201.28 and 201.29, both of which posit an ability for the full range of sedentary work, is similarly flawed.
 
 
 16
 Ordinarily we would be required to remand so that the ALJ could take vocational evidence to meet the Secretary's burden of proof at step five. However, the ALJ also concluded that claimant was capable of light work, a finding that was supported by the RFC assessment of Dr. Marxuach and Dr. Benitez's findings following his physical examination of the claimant.[15] Light work generally does not require use of the hands and fingers for fine activities to the extent required in much sedentary work. See SSR 83-10 at 179 (CE 1983). While the ALJ did not expressly refer to the corresponding grid rules for light work in his decision (i.e., Rules 202.21 and 202.22), we think his not disabled finding is supportable on the basis that claimant could perform light work.
 
 
 17
 Finally, we discern no error in the ALJ's treatment of claimant's allegations of pain. The ALJ properly questioned claimant on the nature and frequency of her pain, the effects of her medication, daily activities, and functional restrictions in accordance with Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986) and SSR 88-13. While there was clearly objective medical evidence that supported claimant's complaints of pain, the ALJ noted certain inconsistencies in the record, such as the fact that claimant's testimony that her medications caused adverse side effects was not corroborated by any of the medical records.[16] Such inconsistencies supported the ALJ's conclusion that claimant's complaints of disabling pain were not fully credible. Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987). We note further that claimant has not done all that she might have to remedy her condition. Claimant testified that she preferred not to take her pain medications. The record also discloses that she has been offered cortisone therapy and surgery to relieve her carpal tunnel syndrome but that she has declined both alternatives. "Implicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's ability to work." Tsarelka v. Secretary of Health and Human Services, 842 F.2d 529, 534 (1st Cir. 1988). Claimant made no showing that the various medications and other treatments that had been offered to relieve her carpal tunnel syndrome would not restore her ability to work. Nor did she offer a "good reason" for failing to take advantage of the various remedies that have been offered to her. Tsarelka, id., ("If a claimant does not follow prescribed treatment 'without a good reason,' he or she will not be found to be disabled.") (quoting 20 C.F.R. Sec. 404.1530). In view of the foregoing, we find that substantial evidence supports the ALJ's decision.
 
 
 18
 Judgment affirmed.
 
 
 
 [1]
 Claimant reported that she could not drive or do housechores, although she occasionally washed dishes. (Tr. 65)
 
 
 [2]
 Shortly before the hearing, claimant submitted a list of medications that had been prescribed for her. These included Valrelease (an anti-anxiety and anti-muscle spasm drug), Anaprox, Indocin, Flexeril, and Feldene (medications for muscle relaxation, inflammation, and arthritis). When the ALJ asked claimant whether her medications relieved her pain, claimant indicated that she preferred to remain lying down and not taking her medications because they caused adverse side effects. (Tr. 29). However, the ALJ correctly observed that the medical evidence indicated that claimant had never complained of any adverse side effects to her treating physicians. We further note that claimant's list of medications indicated that she was not taking them because she was pregnant. (Tr. 195)
 
 
 [3]
 These rules apply to workers with transferable and non- transferable skills whose RFCs are limited to the sedentary range of work
 
 
 [4]
 Unless otherwise noted, the information which follows is contained in Dr. Vargas's 12/3/91 report and the reports of the tests that he ordered. (Tr. 150-56, 158-60)
 
 
 [5]
 Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1527. It frequently accompanies carpal tunnel syndrome. See The Mosby Medical Encyclopedia, (1985 ed.) p. 730
 
 
 [6]
 However, the EMG showed no evidence of lower motor neuron disease. (Tr. 160)
 
 
 [7]
 A CT scan of claimant's lumbar spine was normal, with no evidence of disc herniation. (Tr. 158)
 
 
 [8]
 Although Dr. Vargas referred claimant to a hand surgeon, there are no records from a hand surgeon before us. However, claimant's initial disability report indicated that she had seen Dr. Julio Simons for possible surgery to relieve her carpal tunnel syndrome. (Tr. 51). According to the claimant, Dr. Simons recommended that claimant initially receive cortisone shots because she still had 75% use of her hands. If claimant worsened despite the shots, surgery was recommended. (Tr. 51-2, 79). But claimant indicated that she did not wish to undergo cortisone shots, stating, "I have enough traumas in life to have shots with possible side effects." (Tr. 79)
 
 
 [9]
 X-rays taken for Dr. Benitez on 3/27/92 showed that the cervical spine had normal vertebral alignment and minimal dextroscoliosis of the lumbosacral spine. (Tr. 186)
 
 
 [10]
 On April 23, 1992, Dr. A.M. Marxuach, a nonexamining internist, completed a form assessment of claimant's physical RFC. Dr. Marxuach concluded that claimant could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds (findings consistent with medium work under 20 C.F.R. Sec. 404.1567(c)), that she could stand, walk, or sit up to six hours in an 8-hour day, and that she had no limitations in her abilities to push, pull, reach, handle, finger, or feel. (Tr. 112)
 
 
 [11]
 Dr. Vargas had previously indicated that claimant could return to work on 6/1/92. (Tr. 144, 146). While he modified his diagnosis in response to Dr. Berrios's EMG and nerve conduction studies, he did not comment further on claimant's capacity for work
 
 
 [12]
 We note that neurologists generally perform mental status evaluations as part of the standard neurological examination. See, e.g., The Merck Manual, (Robert Berkow, M.D., ed., 16th ed. 1992), p. 1382, McQuade, Analyzing Medical Records, Sec. 4-3, p. 90 (1987). We therefore reject claimant's contention that the ALJ could not rely on Dr. Benitez's mental status findings because Dr. Benitez was not a psychiatrist. While we agree that Dr. Benitez's report alone was not substantial evidence that claimant lacked a mental impairment, see Boyce v. Sullivan, 754 F. Supp. 126, 128 (N.D. Ill. 1990)(neurologist's cursory mental exam was not substantial evidence of mental condition), we think the ALJ could rely on Dr. Benitez's report in evaluating this issue
 
 
 [13]
 We note that it is not clear that Dr. Colon actually treated claimant for there are no records of any treatment following her evaluation on 5/5/92. Claimant's testimony on this score was ambiguous: on one hand she indicated that she had not seen a psychiatrist in seven or eight months. (Tr. 27). She subsequently indicated that she received appointments every month and a half. (Tr. 28). But there are no records which support her latter assertion
 
 
 [14]
 We also are not persuaded that a remand is required because the ALJ failed to complete a PRTF. The record discloses that the ALJ did append a PRTF to his decision. (Tr. 20). However, the ALJ's form is an abbreviated version of the standard PRTF. The ALJ's PRTF simply states that the claimant does not have a medically determinable mental impairment. It does not review all the categories of potential mental impairments listed under 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.00 (Mental Disorders), which are set forth in the standard PRTF. While we think the use of the standard form is preferable, we do not read the regulations to preclude the use of an abbreviated PRTF when an ALJ determines that there is no medically determinable impairment. 20 C.F.R. Sec. 404.1520a(b)(2) provides that the SSA must indicate whether certain medical findings relevant to the ability to work are present or absent only "[i]f we [i.e., the SSA] determine that a mental impairment exists." If there is insufficient evidence that a mental impairment exists, there will be presumably be no medical findings which would allow the SSA to complete the standard PRTF. In any event, on this record, we think that any error that the ALJ may have made in failing to complete the standard PRTF was harmless
 
 
 [15]
 Contrary to the claimant's arguments on appeal, the record does not contain uncontroverted evidence of disability from claimant's treating physicians. In fact, none of claimant's physicians ever opined that she was totally disabled
 
 
 [16]
 While the ALJ did not explicitly refer to the record which indicated that claimant was not taking her medications because she was pregnant, this is another inconsistency