Laureano v. SSA                    04-CV-462-SM  05/24/05

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Herman Laureano,
o/b/o Keyla Ortiz,[1]
     Claimant

     v.                                    Civil No. 04-cv-462-SM
                                           Opinion No. 2005 DNH 084
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
     Respondent


**O R D E R**


     Herman Laureano moves to reverse the Commissioner's denial

of her granddaughter's application for children's Supplemental

Security Insurance disability benefits.  See 42 U.S.C. §§ 405(g)

and 1383(c)(3) (the "Act").  Among other things, she says the

Administrative Law Judge who authored the Commissioner's final

decision erred in concluding that Keyla's impairment did not

meet, equal, or functionally equal a listed impairment.

Respondent objects and moves for an order affirming the final

decision of the Commissioner.

---

     [1]    Although the record contains several references to the
child's name as being "Kayla," it appears that her name is
actually "Keyla."  See, e.g., Nashua School District Individual
Education Plan, Transcript at 107.  Accordingly, the court has
used that spelling throughout this order.

For the reasons set forth below, the Commissioner's motion for an order affirming her decision is granted.

**Factual Background**

I.   Procedural History.

In June, 2002, Ms. Laureano filed an application for Supplemental Security Income benefits on behalf of her granddaughter, Keyla, alleging that the child became disabled on May 22, 2002, as a result of learning disorders and borderline intellectual functioning.  The Social Security Administration denied her application.

Pursuant to Ms. Laureano's request, on December 2, 2003, an Administrative Law Judge ("ALJ") conducted a hearing on Laureano's application and considered her claims de novo.  Ms. Laureano and Keyla, who were represented by counsel, appeared and testified (Ms. Laureano testified through a Spanish interpreter). The ALJ issued his order on April 30, 2004, concluding that Keyla was not entitled to benefits because she did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any listed impairment(s).  On

2

October 1, 2004, the Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

In response, Ms. Laureano filed this timely action, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that Keyla is disabled within the meaning of the Act. Laureano then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 5). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 6). Those motions are pending.

II. Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 7), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

I.  Properly Supported Factual Findings by the ALJ
    are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2]

Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold

_____

[2]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those

5

determinations are supported by specific findings.  See

Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,

195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &

Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).


II.   Entitlement to Children's Disability Benefits.

     In August of 1996, prior to Ms. Laureano's having filed an

application for benefits on behalf of Keyla, Congress enacted the

Personal Responsibility and Work Opportunity Reconciliation Act

of 1996, which included a new (more rigorous) standard for

defining childhood disabilities under the Social Security Act.

It provides, in pertinent part, that:

> An individual under the age of 18 shall be considered
> disabled for the purposes of this subchapter if that
> individual has a medically determinable physical or
> mental impairment, which results in marked and severe
> functional limitations, and which can be expected to
> result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12
> months.

42 U.S.C. § 1382c(a)(3)(C)(I).  See also 20 C.F.R. § 416.924.


     In evaluating a child's application for SSI benefits, an ALJ

must engage in a three-part inquiry and determine: (1) is the

6

child engaged in substantial gainful activity; (2) does the child have an impairment or combination of impairments that is severe; and, finally, (3) does the child's impairment meet or equal an impairment listed in Appendix 1, Subpart P of the regulations. See 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment "results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).

An impairment "functionally equals" the listings if it results in "marked" limitations in two domains of functioning, or if it results in an "extreme" limitation in one domain. Id. The six domains of functioning in which the child's abilities are assessed are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Ms. Laureano does not assert that Keyla suffers from an extreme limitation in any domain and, therefore, the court need not discuss the elements of such a limitation.

7

Ms. Laureano does, however, assert that Keyla suffers from "marked" limitations in two domains of functioning. A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. . . It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2). In other words, a "marked" limitation would, generally speaking, place the child in the lowest five percent (5%) of functioning in that domain for the child's age group. It is, then, a substantial limitation.

## Discussion

### I.   Background - The ALJ's Findings.

In concluding that Keyla was not disabled within the meaning of the Act, the ALJ properly employed the mandatory three-step sequential evaluation process described in 20 C.F.R. § 416.924. Accordingly, he first determined that Keyla had not been engaged in substantial gainful activity since her alleged onset date. Next, the ALJ concluded that the medical evidence of record indicates that Keyla does suffer from a "severe" impairment -

8

learning disorders and borderline intellectual functioning. Transcript at 23. Ms. Laureano does not challenge either of those findings.

At the third and final step of the sequential analysis, however, the ALJ concluded that Keyla "does not have an 'extreme' limitation in any domain of functioning, a 'marked' limitation in two domains of functioning, and does not functionally equal the severity of the listings." Administrative Transcript ("Tr.") at 26. Accordingly, the ALJ concluded that Keyla "has not been under a 'disability' at any time from the alleged onset date through the date of [his] decision." Id. at 27.

II. Functional Equivalent of a Listed Impairment.

In support of her motion to reverse or, in the alternative, remand the decision of the ALJ, Ms. Laureano asserts that the ALJ erred in concluding that Keyla does not suffer from marked limitations in two domains of functioning. While she agrees with the ALJ's determination that Keyla is markedly limited in her ability to acquire and use information, she disagrees with the ALJ's conclusion that Keyla is not markedly limited in her

9

ability to attend and complete tasks.  The regulations describe

that domain as follows:

> Attending and completing tasks.  In this domain, we
> consider how well you are able to focus and maintain
> your attention, and how well you begin, carry through,
> and finish your activities, including the pace at which
> you perform activities and the ease with which you
> change them.
>
> (1) General.  Attention involves regulating your levels
> of alertness and initiating and maintaining
> concentration.  It involves the ability to filter out
> distractions and to remain focused on an activity or
> task at a consistent level of performance.  This means
> focusing long enough to initiate and complete an
> activity or task, and changing focus once it is
> completed.  It also means that if you lose or change
> your focus in the middle of a task, you are able to
> return to the task without other people having to
> remind you frequently to finish it.
>
> Adequate attention is needed to maintain physical and
> mental effort and concentration on an activity or task.
> Adequate attention permits you to think and reflect
> before starting or deciding to stop an activity.  In
> other words, you are able to look ahead and predict the
> possible outcomes of your actions before you act.
> Focusing your attention allows you to attempt tasks at
> an appropriate pace.  It also helps you determine the
> time needed to finish a task within an appropriate
> time-frame.

20 C.F.R. § 416.926a(h).  For children Keyla's age (12 to 18),

the ability to attend and complete tasks means that they are able

"to pay attention to increasingly longer presentations and

10

discussions, maintain [their] concentration while reading textbooks, and independently plan and complete long-range academic projects. [They] should also be able to organize [their] materials and to plan [their] time in order to complete school tasks and assignments.  In anticipation of entering the workplace, [they] should be able to maintain [their] attention on a task for extended periods of time, and not be unduly distracted by [their] peers or unduly distracting to them in a school or work setting."  Id. at § 416.926a(h)(2)(v).

Ms. Laureano points out that the record contains several references to Keyla's difficulty in maintaining attention in class and her tendency to be easily distracted from assigned tasks.  Based upon those references in the record, Laureano asserts that Keyla's "functional limitations demonstrate that Keyla's functioning with regard to attending and completing tasks was significantly less than a child without mental impairments." Claimant's memorandum at 14.

Importantly, however, the record also contains substantial evidence supportive of the ALJ's determination that Keyla does

11

not suffer from a "marked" impairment in that domain. For example, when asked to assess Keyla's ability to attend and complete tasks, special education teacher, Amanda Delaney, reported that "Keyla can attend and complete tasks." Transcript at 140.[3]

Also lending support to the ALJ's conclusion that Keyla is not markedly limited in her ability to attend and complete tasks is the report of Thomas Lynch, Ph.D. In his report, Dr. Lynch describes, in substantial detail, the results of numerous tests he administered to Keyla. Transcript at 170-81. Among other things, Dr. Lynch observed that Keyla tested in the low average to average range on the "Freedom from Distractibility Index." Transcript at 176. He also opined that while Keyla does have difficulty attending and completing some tasks, this is primarily due to her lack of refined language skills and difficulty processing verbal information, rather than an inability to

---

[3]     Laureano correctly points out that Ms. Delaney went on to note that Keyla often "requires one-on-one assistance with reading and other language-based skills," id., but that observation is not particularly surprising, given Keyla's substantial weakness in the area of broad language skills - a domain in which the ALJ concluded that Keyla's abilities are markedly limited.

concentrate or focus on the task at hand. Id. at 180. Overall, based upon the results of all of the testing to which he subjected Keyla, as well as his personal observations of her, Dr. Lynch concluded that Keyla's "attention span appeared to be within normal limits based on the testing and her concentration was generally adequate as well." Id. at 173.

Additionally, the Associate School Psychologist, Kelley Messenger, M.A., performed a cognitive assessment of Keyla and, after administering numerous tests and observing Keyla, concluded that her "ability to sustain attention, concentrate and exert mental control is similar to others her age." Transcript at 161. Finally, in the report prepared by Nicholas Kalfas, Ph.D. (a non-examining physician), Dr. Kalfas concluded that while Keyla is markedly limited in her ability to acquire and use information, her ability to attend and complete tasks is "less than marked." Transcript at 166.

Plainly, the record in this case reveals that Keyla suffers from learning disabilities, with mild to moderate impairment in a number of different cognitive areas (most significantly, those

involving expressive and receptive language skills).  But, that evidence does not so clearly compel the conclusion that she suffers from a "marked limitation" in her ability to attend and complete tasks that the court may properly reverse the ALJ's disability determination.  Stated somewhat differently, although there is certainly evidence supportive of Ms. Laureano's view that Keyla is disabled (as defined in the statute and pertinent regulations), there is also substantial evidence supportive of the ALJ's determination that she is not.  Given that fact, the court must affirm the ALJ's disability determination.  See, e.g., Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

III. Failure to Meet a Listed Impairment.

Ms. Laureano also challenges the ALJ's disability determination on grounds that he "should have, at the very least, considered whether Keyla's mental impairments met or medically equaled listing 112.02 (organic mental disorders)."  Claimant's memorandum at 19.

14

To satisfy the requirements of listing 112.02, a child must suffer from a "[m]edically documented persistence of . . . [an] impairment of cognitive function, as measured by clinically timely standardized psychological testing." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.02(A). Additionally, the child must have a marked impairment in at least two of six identified categories. Id. § 112.02(B). Here, Ms. Laureano asserts that Keyla suffers from a marked impairment in: (1) "age appropriate cognitive/communicative function"; as well as (2) the ability to maintain "concentration, persistence, or pace."

As previously noted, the ALJ determined that Keyla does have a "marked impairment in the domain of acquiring and using information." Transcript at 26. This, combined with the medical findings of record which document Keyla's significant impairment in the realm of language skills, supports Laureano's assertion that Keyla suffers from a marked impairment in age appropriate cognitive/communicative function. The issue raised by Laureano's motion, however, is whether the ALJ erred in failing to find that Keyla also suffers from a marked limitation in her ability to maintain concentration, persistence, or pace.

15

In support of her assertion that the ALJ erred in that regard, Laureano largely restates the arguments that she raised in support of her view that Keyla is markedly limited in her ability to attend and complete tasks (e.g., citing the report prepared by Keyla's guidance counselor, noting that she has difficulty paying attention to spoken instructions, focusing on assigned tasks, and working without distraction). As noted earlier, however, while the record certainly contains evidence supportive of Ms. Laureano's belief that Keyla suffers from an impaired ability to concentrate, focus, and maintain appropriate pace, it also contains substantial evidence supportive of the ALJ's determination that Keyla's impairments are not sufficiently severe (either alone or in combination) to meet or equal a listed impairment (i.e., organic mental disorders). For the reasons discussed above, the court concludes that the record contains substantial evidence supportive of the ALJ's conclusion that Keyla does not suffer from a marked impairment in her ability to maintain "concentration, persistence, or pace." And, when the record contains substantial evidence that is capable of supporting two plausible, but conflicting interpretations, the

16

court is compelled to affirm the interpretation adopted by the ALJ. Such is the case here.

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and Ms. Laureano, the court concludes that there is substantial evidence in the record to support the ALJ's determination that Keyla was not disabled at any time prior to the date of his decision and that the ALJ more than adequately discussed the basis for his conclusion. The ALJ's determination that Keyla's impairments do not meet or equal any impairment listed in Appendix 1, Subsection P, is supported by substantial evidence. Similarly, his conclusion that Keyla's impairments are not functionally equal to a listed impairment is also supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 5) is denied, and the Commissioner's motion to affirm her decision (document no. 6) is

17

granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 24, 2005

cc:  Raymond J. Kelly, Esq.
     David L. B