Cathy Lore v. SSA                    CV-02-318-B    08/20/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Cathy Lore**
**o/b/o Sean Lore**

v.                                      Civil No. 02-318-B
                                        Opinion No. 2003 DNH 141
**Jo Anne B. Barnhart**


### MEMORANDUM AND ORDER

On October 20, 1993, Sean Lore was granted Title XVI Supplemental Security Income ("SSI") disability benefits for attention deficit hyperactivity disorder ("ADHD"), and for the secondary diagnosis of seizure disorder. The Social Security Administration ("SSA") conducted a continuing disability review in March 1999, concluding that Lore was no longer disabled and that entitlement to SSI benefits would end in May 1999. A disability hearing officer ("DHO") reconsidered the decision on Lore's request[1], and reaffirmed SSA's conclusion that Lore was no longer entitled to benefits. Lore filed a timely request for rehearing upon which administrative law judge ("ALJ"), Frederick

---

[1] I note that Lore's actions before the SSA and this court were brought by his mother, Cathy Lore, on his behalf.

Harap, held a discretionary hearing. On March 28, 2001, the ALJ issued his decision determining that Lore was not disabled. Lore appealed, but on May 9, 2002, the Appeals Council denied his request for review.

Lore brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the SSA's decision to discontinue Lore's benefits. In response, the Commissioner moves this court to enter an order affirming her final decision. For the reasons set forth below, I grant the Commissioner's motion and affirm her final decision (Doc. No. 10).

## I. BACKGROUND

### A. Background Information

Sean Lore was born on November 16, 1990. He was two years old and in daycare when he was found to be disabled. In March 1999, when it was determined that he was no longer disabled, Lore was eight years old and in the second grade.

### B. Medical Information

Lore began having seizures in late October 1992. On November 6, 1992, Lore was brought to the emergency room of Elliot Hospital because of his seizures. A CT scan was

performed, which indicated that Lore suffered from a right thalamic hemmorhage.[2] Dr. Anthony Martino transferred Lore to Dartmouth-Hitchcock Hospital ("Hitchcock Center"). On November 9, 1992, Dr. Robert Harbaugh performed a cerebral angiogram, which was negative, and Lore was discharged.

In December 1992, Dr. Martino noted that Lore had been doing reasonably well since his discharge, but recommended the surgical removal of an accessible lesion to eliminate the risk of future hemorrhaging. A craniotomy (to remove the lesion) was performed on January 26, 1993. On February 22, 1993, Dr. Martino reported that Lore was doing well and that, overall, he had returned to his normal activities. However, Lore's mother reported that she was having difficulty giving Lore his prescribed anti-convulsive medication, and that Lore still suffered from seizures. The seizures consisted of sudden stiffening in all four extremities, frothing at the mouth, and loss of consciousness. Dr. Martino referred Lore to Dr. Brian Kossak for evaluation and treatment, as Dr. Martino felt the seizures could be a longstanding problem.

_____

[2] Escape of blood or bleeding in the thalamus (sensory relay station of the brain). Attorneys' Textbook of Medicine ¶ 82.21 (3d ed. 2002)

-3-

Lore's seizures continued to be treated with anti-convulsive medications. From March 1994 to February 2000, Lore's seizures generally occurred infrequently. In February 2000, however, Lore had an abnormal EEG finding. Although the cause of this abnormality apparently was never identified, the medical record notes that it could reflect an abnormal cleft of the brain substance or an old ischemic event.[3] In an unrelated event, Lore was hospitalized in early February 2000 for regulation of his seizure medication. Dr. Kossak switched Lore to a new medication. On March 28, 2000, Dr. Kossak noted that Lore was responding well to this medication. In January 2001, Dr. Michael Robbins conducted a pediatric neurological evaluation of Lore, which resulted in a normal exam and EEG.

Prior to Lore's onset of seizures and his craniotomy, he exhibited behavioral problems, such as hyperactivity and defiance. While recovering from the surgery at the Hitchcock Center, staff members observed Lore bang his head on the floor when being told "no" and when put in his crib for naps. On February 16, 1993, Easter Seal Rehabilitation Center performed a

---

[3] A deficiency of blood usually due to functional constriction or actual obstruction of a blood vessel. Dorland's Medical Dictionary 861 (28th ed. 1994)

-4-

developmental evaluation because of concerns about Lore's behavior. It concluded that Lore demonstrated skills typically seen in children his age. However, both Dr. Martino and Dr. Kossak noted that Lore threw temper tantrums and "acted out."

Lore was admitted to the Hitchcock Center on May 11, 1993 for evaluation of his destructive behavior. Dr. Peter Williamson examined Lore and reported that his self-destructive episodic behavior consisted of screaming, hitting himself, head-banging, and gouging his eyes. Dr. Williamson noted that this behavior predated Lore's craniotomy. Dr. Willaimson also concluded that epilepsy was unlikely, as Lore's episodes were provoked and he was apparently cognizant of his surroundings during his "acting out."

On May 17, 1993, Dr. Timothy Colbert conducted a behavioral pediatrics consultation of Lore. He noted that Lore was generally compliant with requests and without any clear opposition or defiant behavior. He suggested that there may be some correlation between the lesion Lore experienced and his behavioral issues. However, Dr. Colbert ultimately concluded that Lore's behavioral problems were more likely the product of his natural temperament and environment. In other words, Lore

acted out to get attention, whether positive or negative. Dr. Colbert suggested that Lore would respond to a strong, consistent behavioral management program. He recommended that Lore and his mother "be referred to a good behavioral psychologist for training and monitoring of behavioral modification techniques."

A report from Lore's school psychologist, in November 1996, indicated that Lore was an active yet cooperative child with borderline to average intellectual ability, significantly impacted by severe deficits in visual-motor integration skills using paper/pencil. Additionally, the psychologist concluded that his attention, concentration and physical restlessness were notably improved following morning break, which included snack time. However, Lore continued to display some behavioral issues, including negative behavior at school and home.

In December 1998, Dr. Allan Mendell, completed a mental impairment report. Dr. Mendell found that Lore was hyperactive, disruptive in school, socially inappropriate - but able to keep a friend, and that his concentration and attention were very poor. In January 1999, a clinical psychologist, Dr. Angel Martinez, conducted a psychological evaluation of Lore. Dr. Martinez reported that Lore was diagnosed with ADHD and oppositional

defiant disorder ("ODD").  Dr. Martinez found that Lore's cognitive functioning was in the low-average to average range, and that his reasoning skills and problem solving abilities were generally within the range expected for his age.  Lore could adequately express his needs, communicate with others and engage in physical activities, but had some difficulties with fine motor tasks.  With respect to social functioning, Dr. Martinez noted that Lore had two neighborhood friends and got along well with other children at home and at school.  Martinez concluded that Lore would not encounter many difficulties in interacting with peers, but Lore might have slight problems in social interaction because of his inattention and hyperactivity symptoms.  Lore's self-care skills were found to be generally adequate for his age, but his ability to respond appropriately to demands was compromised by his ADHD symptoms.  Finally Martinez concluded that Lore's focused attention and concentration were fair, but that sustained concentration could not be maintained throughout the entire evaluation.

In February and March 1999, Dr. Michael Schneider, a state agency psychologist, reviewed the record and prepared a childhood disability evaluation form concerning Lore's impairments.  Dr.

Schneider found there was apparent improvement in his ADHD, ODD, and seizure disorder. Specifically, Dr. Schneider found no evidence of limitation in cognitive or communicative functioning and a less-than-marked limitation in motor, social, and personal functioning. Lastly, Dr. Schneider indicated that Lore's concentration, persistence and pace were at a severe level, but not at the level of being marked.[4]

In June 1999, Dr. Burton Nault completed an advisory childhood disability evaluation. Dr. Nault opined that it was impossible to state that medical improvement had actually occurred in Lore's seizure disorder. However, Dr. Nault also noted that, in his opinion, the seizures had never been disabling. Dr. Nault concluded that although Lore's impairments may be severe, they did not meet, medically equal, or functionally equal the severity of a listed impairment.

In July 1999, Dr. Diane Collins conducted a psychological evaluation and intellectual profile of Lore. Dr. Collins found that Lore had a verbal IQ of 85, a performance IQ of 91 and a

---

[4] According to Dr. Schneider's report, Lore suffered a "more than minimal amount of dysfunction within the concentration, persistence and pace domain. However, overall, [Lore's] limitations [did] not meet or equal Listings levels." See also, 20 C.F.R. § 416.926a(c)(3)(i) (1999) and 20 C.F.R. § 416.926a(e)(2) (2001) for definition of "marked limitation."

full scale IQ of 87, placing him in the low-average to average range.  Dr. Collins noted that her mental status evaluation was compatible with Dr. Martinez' findings, although the issue of sustained attention was not a problem during the testing procedure.  Dr. Collins opined that Lore demonstrated ease and strength in his ability to communicate pragmatically; performed in the low-average to average range in his ability to function in the areas of academics, reasoning and problem-solving; would be without impairment in engaging in physical activities; demonstrated an ability within normal limits to help himself in areas of personal need and safety; and, with medication management, would be able to perform in the low-average to average range in the ability to engage in activities, sustain those activities and pace himself appropriately.

In August 1999, Dr. Mendell noted that Lore was well-behaved, his mood and social abilities were normal, his thoughts were goal-directed and coherent, and that Lore denied delusions and hallucinations.  Dr. Mendell reported that Lore attended summer camp daily, but required medication, structure, and supervision for his concentration and attention.

In October 1999, several persons testified before DHO

Theodore J. Starvu in regard to Lore's request for reconsideration. Ms. Macropol, Lore's third grade teacher, observed that Lore's cognitive abilities were satisfactory, that he communicated his ideas with good content, that he read and performed math skills at grade level. Ms. Macropol indicated that Lore had lots of friends and interacted well with them, and that she had not observed any behavioral extremes. She noted that Lore's organizational skills were deficient, but that he still got his assignments done on time. Ms. Macropol indicated that she had not observed Lore ever having a seizure.

Mrs. Lore described her son as "very aggressive," mainly because he is not aware of his strength. She stated that he runs through the house knocking things down and "kicks, spits, hits, and punches." She indicated that he was argumentative with his four year old sister, taking things from her and hurting her, and that he had temper tantrums when reprimanded. She reported that his functioning deteriorated after school and that she had problems controlling him. Additionally, she reported that he averaged three minor seizures per month, occurring at night, but that the last such seizure was four months before the hearing. However, Mrs. Lore stated that his last grand mal seizure was two

months prior to the hearing.  She reported that Lore had to hear things three to four times before he understood them and that his concentration was poor even when she read to him.  However, his attention improved when watching wrestling on television.

Mrs. Harrison, a friend of Lore's mother, stated that Lore had periods of rage about once every two weeks during which he kicked, threw toys, and hurt people.  Additionally, Lore had problems because he got "hyper," could not watch an entire film, and did not finish tasks.  She indicated that Lore had major problems socially and picked fights with his peers.

Mrs. Millete, Lore's grandmother, stated that she was scared to babysit Lore because of his temper tantrums.  She also stated that Lore did not like to hear "no" and did chores when he wanted to and not when he was told.

The DHO spoke with Lore and reported that Lore denied visual, hearing and communication problems.  Lore stated that he had lots of friends, but admitted to having problems washing and taking care of himself.  The DHO noted that the writing of Lore's name appeared immature and illustrated motor function problems, but that Lore could read at grade level and perform other age-appropriate tasks.  The DHO stated that Lore was a young, well-

built, robust boy who was cooperative. Although Lore was fidgeting at times, the DHO concluded he was able to concentrate and observed no significant abnormalities.

In November 2000, Lore's primary care physician, Dr. Schwartzberg, completed a functional assessment of his abilities. He indicated that there was no evidence of limitation in Lore's motor development, less than a moderate limitation in social development and cognitive/communicative development, a moderate limitation in his personal development, and a marked limitation in concentration, persistence and pace.

At the administrative hearing before the ALJ, Lore's mother testified that Lore had previously suffered grand mal seizures, but was now having only minor seizures, the last such seizure being a month prior to the hearing. She indicated that Lore had no disciplinary problems at school and that he was "very very good" there, but that he was a disciplinary problem at home. Additionally, she reported that Lore had dizzy spells once or twice a month, although he had not missed school because his physical problems generally occurred after school or in the middle of the night.

C. **ALJ's Decision**

The ALJ employed the three step analysis for evaluation of a child's continuing disability. 20 C.F.R. § 416.994a (2002). The ALJ determined that there had been medical improvement in Lore's condition and that he no longer met or medically equaled Listing 112.02 (organic mental disorder), the listing Lore had previously met when he was found disabled.

At step three, the ALJ determined that Lore's ADHD and seizure disorder were severe within the meaning of the regulations, but that no treating or examining physician had concluded that Lore's impairment currently met or medically equaled a listed impairment. The ALJ also determined that Lore's impairments did not "functionally equal" any of the listed impairments. In making this analysis, because of a change to the regulations on January 2, 2001, the ALJ analyzed functional equivalence both as it existed prior to and after those changes. In sum, the ALJ concluded that Lore's disability ceased in March 1999.

## II. STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by

the claimant, I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the Commissioner's decision. See 42 U.S.C. § 405(g). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive only if they are supported by substantial evidence. See id.; Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. See Irlanda Ortiz, 955 F.2d at 769; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); see also Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [C]ommissioner's conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (citations omitted). Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez

-14-

v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

### III. **DISCUSSION**

The SSA has adopted a three-step sequential evaluation for periodic determinations of whether a child's disability continues. 20 C.F.R. § 416.994a(b). First, the SSA must determine if there has been any "medical improvement" in the child's condition. Id. at § 416.994a(b)(1). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant] w[as] disabled or continued to be disabled . . . based on changes (improvements) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." Id. at § 416.994a(c). Second, the SSA determines whether, despite improvement, the impairment still meets or equals the severity of the listed impairment it met at the time of the most recent favorable decision that the claimant was disabled. Id. at § 416.994a(b)(2). If the impairment does, the child's disability will be found to continue. If the impairment does not, the SSA will proceed to step three. In step

three, the SSA must determine whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children. Id. at § 416.994a(b)(3).

### A. Medical Improvement of Lore's Impairments

Since Lore's initial, favorable disability determination, the medical record indicates that his ADHD has improved. In November 1997, it was reported that Lore showed occasional behavioral problems at home, but had settled down at school. In 1999, Dr. Schneider concluded that there had been medical improvement in Lore's ADHD. Dr. Collins's July 1999 evaluation of Lore noted that he had no problem sustaining attention during her evaluation, and in August 1999, Dr. Mendell concluded that Lore's mood and social abilities were normal. Mrs. Lore indicated that although Lore's behavior was bad at home, he nevertheless had no trouble attentively watching wrestling on t.v. Ms. Macropol, Lore's teacher, testified in October 1999 that Lore did not exhibit any behavioral extremes.

A review of the record reveals that the overall medical impression of Lore, since his initial disability determination, was that his ADHD has improved. At worst, it can be managed by medication and structured activities. Lore's behavior at school

has improved dramatically, resulting in his mother stating that he is "very, very good there." The ALJ's finding that Lore's ADHD has improved is supported by substantial evidence.

Likewise, Lore's seizure disorder has improved and is presently well-managed by anti-convulsive medication. Although Lore still suffers from seizures, Dr. Kossak's reports indicate that as of October 1998, they occur only infrequently. Lore's mother testified before the ALJ that his seizures were minor in nature and no longer of the grand mal variety. This was also noted in Dr. Martinez's January 1999 report. Dr. Schneider found in March 1999 that there had been medical improvement in both Lore's seizure disorder and ADHD, and Dr. Nault opined in June 1999 that Lore's seizure disorder had never been disabling. Lastly, the most recent neurological examination of Lore, conducted by Dr. Robbins, was normal. Given Lore's medical record, which includes the opinions of five physicians that his seizure disorder has improved or become well-managed with anti-convulsive medications, the ALJ's conclusion that Lore's seizure disorder has medically improved is supported by substantial evidence.

## B. Lore's Condition No Longer Meets Listing 112.02

The second step in the sequential evaluation is to determine whether Lore's impairment, although improved, still meets or equals the severity of listing he previously met. A review of the medical record supports the ALJ's finding that no treating or examining physician identified criteria that would meet or equal any listing impairment. Indeed, Drs. Collins, Martinez, and Schneider, who each independently evaluated Lore, concluded that he only suffered a marked limitation in concentration, persistence or pace. Although Dr. Schwartzberg's functional assessment of Lore in November 2000 indicated that Lore had moderate limitations regarding social development, personal development, and cognitive/communicative development, Dr. Schwartzberg also concluded that Lore had a marked limitation only in concentration, persistence or pace. Considering the opinions of these four doctors, Lore's only severe or marked limitation was in the area of concentration, persistence or pace. As such, the ALJ's conclusion that Lore's improved impairment failed to meet or equal the severity required under listing 112.02 (in effect at the time of the initial disability determination) is supported by substantial evidence. In short,

-18-

no medical evidence exists in the record to support a finding that Lore was disabled under listing 112.02.

## C. **Lore is not Presently Disabled**

The third step in the sequential evaluation is to determine whether the child is disabled under the rules for determining eligibility in initial disability claims for children. First, the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). The ALJ found Lore's impairments severe. Second, the ALJ must determine whether the impairment meets, medically equals, or functionally equals in severity the applicable listed impairment in appendix 1 of the regulations. Id. at § 416.924(d). As I have concluded that the ALJ's finding that Lore's impairments did not meet or medically equal a listed impairment was supported by substantial evidence, I turn to whether substantial evidence supports the ALJ's conclusions that Lore's impairments were not functionally equivalent to 112.02 at 20 CFR part 404, subpart P, appendix 1.

I briefly note Lore's contentions that the ALJ erred in this step of the process by failing to consider whether Lore's impairment satisfied other listed disabilities. He also argues that it is not clear whether the ALJ properly considered his

-19-

impairment under 112.02.  I dismiss these arguments.  First, it is clear from a full reading of the ALJ's opinion that he assessed Lore's impairment under the criteria set forth in 112.02.  Indeed, this listing is at the heart of the dispute and is specifically referenced by the ALJ.  Second, Lore bore the burden of demonstrating that he had an impairment which met or equaled a listed impairment in Appendix 1.  See Bowen v. Yuckert, 482 U.S. 134, 146 n.5 (1987); Torres v. Sec. of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989).  It is not enough for Lore to now allege that the ALJ should have considered other listings, which Lore never pressed in his application for benefits, his hearings before the DHO or ALJ, nor to the Appeals Council.  Moreover, even in his appeal before me, Lore presents no substantive argument indicating how his alleged impairments meet the listings he suggests the ALJ should have evaluated in detail.  Cf. Torres, 870 F.2d at 745.

I turn to the ALJ's assessment of whether Lore's impairments were functionally equivalent to a listing in Appendix 1.  The regulations applicable to the period prior to January 2, 2001 provide for four methods for determining functional equivalence.  Those methods involve evaluations of limitation of specific

functions, broad areas of development or functioning, episodic impairments, and limitations related to treatment or medication effects. 20 C.F.R. § 416.926a(b)(1)-(4)(2000). For children like Lore, aged 3-18, the ALJ evaluates functioning in five categories: (1) Cognitive or communicative development; (2) Motor development; (3) Social development; (4) Personal development; and (5) Concentration, persistence and pace. Disability is established when the child demonstrates an extreme degree of limitation in one category or a marked limitation in two categories. 20 C.F.R. § 416.926a(c)(4). For children aged 3 to 18 a marked limitation arises when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning. An extreme limitation arises when there is no meaningful function in a given area. Id. at § 416.926a(c)(3)(i)-(ii).

The ALJ carefully evaluated the reports of, among others, Dr. Schwartzberg, Dr. Collins, Dr. Martinez, and Dr. Mendell. The ALJ concluded that Lore only had a marked impairment in concentration, persistence and pace, and therefore his ADHD or seizure disorder did not functionally equal any listing.

Specifically, the ALJ concluded that the doctors' reports suggested that Lore had a moderate limitation in personal development, a less than moderate limitation in social development and cognitive and communicative development, and that Lore's motor functioning was not significantly limited.  The ALJ's conclusion that Lore, at best, only suffered from a marked limitation in concentration, persistence or pace and therefore failed to demonstrate his impairment functionally equaled any listing is supported by substantial evidence.  Again, the ALJ's decision is supported by substantial evidence in the record.

The new regulations for determining functional equivalence require that the ALJ determine Lore's functioning in six broad areas of functioning called "domains."  For children aged 6 to 12 the domains are: (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being.  A child will be found disabled if that child has marked limitations in at least two of the domains or an extreme limitation in any one of the domains.

The ALJ considered Lore's impairments in light of the new

regulations, and determined that Lore had no restrictions or limitations in his ability to acquire and use information, move about and manipulate objects, care for himself, interact with others, or in his overall health and well-being. The ALJ noted that Lore continued to have some difficulties in the classroom relating to the timely completion of homework because of a weakness in his ability to attend and complete tasks. Thus, the ALJ concluded that Lore had a marked limitation in his ability to attend and complete tasks. Since Lore had no extreme impairments in any domain and only a marked impairment in one domain the ALJ concluded that Lore did not functionally equal any of the listed impairments. This conclusion is supported by the reports of Drs. Collins, Schwartzberg, Martinez, and Robbins. It is further buttressed by the testimony of Lore's teacher Ms. Macropol, who noted that Lore's cognitive abilities were satisfactory, that he communicated his ideas with good content, and that he read and performed math skills at grade level. Ms. Macropol also indicated that Lore had lots of friends and interacted well with them, and that she had not observed any behavioral extremes.

## IV.    CONCLUSION[5]

Pursuant to sentence four of 42 U.S.C. § 405(g), I deny the plaintiff's motion for an order reversing the decision of the Commissioner (Doc. No. 9), and grant the defendant's motion for an order affirming the decision of the Commissioner (Doc. No. 10).  The Clerk of Court is directed to enter judgement in accordance with this order and close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

August 20 , 2003

cc:  David Boderick, Esq.
     Raymond Kelly, Esq.

--------

[5]  I dismiss Lore's contention that the ALJ erred in failing to obtain a medical expert opinion.  Here, multiple physicians concluded that Lore's impairments did not meet or equal a listed disability.  The ALJ's adoption of these conclusions did not require an interpretation of medical data nor require an additional medical expert to explain the physicians' reports. The ALJ did not abuse his discretion by failing to obtain the testimony of a medical expert.
I also dismiss Lore's contention that the ALJ failed to properly assess Mrs. Lore's credibility.  Although I am concerned by the limited findings provided by the ALJ to support his credibility determination, I conclude that it is supported by substantial evidence.  See Frustaglia, 829 F.2d at 195 ("Although more express findings, regarding head pain and credibility, than those given here are preferable, we have examined the entire record and their adequacy is supported by substantial evidence.").