UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carrie Evelyn Ellis,
        Claimant

        v.                                  Case No. 21-cv-540-SM
                                            Opinion No. 2022 DNH 063

Kilolo Kijakazi, Acting Commissioner,
Social Security Administration,
        Defendant


**O R D E R**


        Pursuant to 42 U.S.C. § 405(g), claimant, Carrie Evelyn

Ellis, moves to reverse or vacate the Commissioner's decision

denying her application for Disability Insurance Benefits under

Title II of the Social Security Act.  See 42 U.S.C. §§ 423, et

seq.  The Commissioner objects and moves for an order affirming

her decision.


        For the reasons discussed, claimant's motion is denied, and

the Commissioner's motion is granted.


**Factual Background**

I.    Procedural History.

        In February of 2011, claimant filed an application for

Disability Insurance Benefits ("DIB"), alleging that she was

disabled and had been unable to work since September 9, 2009. She was 47 years old at the time of her alleged onset of disability and had acquired sufficient quarters of coverage to remain insured through December 31, 2014. Thus, to be entitled to Social Security benefits, claimant must establish that she was disabled, as that term is used in the Act, on or before that date.

Claimant's 2011 application was denied and she requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ rendered an unfavorable decision, which was affirmed by the Appeals Council. Claimant appealed to this court, after which the Commissioner filed an "assented-to" motion to remand the matter to the agency for further development of the record. See Ellis v. Social Security Admin., No. 13-cv-412-PB (April 10, 2014).

A second hearing was held and the ALJ issued another unfavorable decision. That decision was affirmed by the Appeals Council and claimant appealed to this court. Again, however, the Commissioner submitted an "assented-to" motion to remand the matter to the agency for further development of the record, representing to the court that it would be assigned to a

2

different ALJ.  See Ellis v. Social Security Admin., No. 16-cv-221-LM (Oct. 14, 2016).

A third hearing was held on March 16, 2017.  Claimant, her attorney, an impartial vocational expert, and an independent medical expert appeared before a new ALJ, who considered claimant's applications de novo.  Approximately six weeks later, the ALJ issued her written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time from September 9, 2009 (claimant's alleged onset date) through December 31, 2014 (her date last insured).  Claimant then requested review by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 10).  In response, the Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 12).  Those motions are pending.

3

II.  Factual Background.

A detailed factual background can be found in claimant's statement of facts (document no. 10-2), as well as the Commissioner's statement of facts (document no. 13).  Those facts relevant to the disposition of this matter are discussed as appropriate.  At this stage, it is sufficient to note that claimant sustained an injury to her right shoulder in November of 2008.  While at work, she was installing a shelf when it fell and struck her right shoulder.  She received numerous treatments, including several surgeries, to address ongoing shoulder pain.  She says that from the date of her alleged onset of disability through her date last insured, she suffered from debilitating pain and restricted movement.  She also suffered from mild to moderate left carpal tunnel syndrome, though she retained normal motor, sensory, and reflex function.

**Standard of Review**

I.   "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if

4

supported by substantial evidence.  See 42 U.S.C. § 405(g).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, then, it is something less than a preponderance of the evidence.  So, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

## II.  The Parties' Respective Burdens.

An individual seeking DIB benefits is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To

5

satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512 and 404.1560.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the claimant's testimony or that of other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do

6

[her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied). The threshold for meeting the Act's definition of disability is, then, fairly high.

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

**The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, she first determined that claimant had not been engaged in substantial gainful employment during the period from her alleged onset date (September 9, 2009) through her date last insured (December 31, 2014). Admin. Rec. at 1276. Next, the ALJ concluded that through her date last insured, the claimant suffered from the following severe impairments: "status

7

post three light shoulder arthroscopic decompression surgeries, degenerative changes of the cervical spine and left carpal tunnel syndrome." Id. But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 1280. Claimant does not object to any of those findings.

Next, the ALJ concluded that, through her date last insured, claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "light" work, subject to the following limitations:

> [S]he is limited from lifting/carrying more than 10 pounds with the right upper extremity and 20 pounds with the left upper extremity. She can sit, stand and walk 8-hours each during a normal workday. She can occasionally reach overhead with the right upper extremity and continuously reach with the left arm. She can reach in other directions without limits. She has no limitations on handling. She can frequently finger with the left hand and continuously finger with the right. She can frequently push/pull with both upper extremities. She could not crawl or climb ladders/ropes/scaffolds, but she can otherwise perform postural activities. She needs to avoid more than occasional exposure to vibrations, dangerous machinery and unprotected heights.

Admin. Rec. at 1281. In light of those restrictions, and in reliance upon the testimony of the vocational expert, the ALJ concluded that claimant was "capable of performing past relevant

8

work as a retail store manager, a cashier, an assistant manager (retail), or as a dispatcher." Id. at 1284. See also Id. at 1352 (vocational expert's testimony about claimant's work history, as well as the physical, educational, and training requirements of her prior jobs). Given that finding, the ALJ concluded that, "The claimant was not under a disability, as defined in the Social Security Act, at any time from September 9, 2009, the alleged onset date, through December 31, 2014, the date last insured." Id. at 1284.

**Discussion**

Both of the government's earlier assented-to motions to remand appear to have been prompted, at least in part, by the original ALJ's repeated failure to address claimant's assertion that she suffers from complex regional pain syndrome. That error was remedied by the ALJ who presided over claimant's third administrative hearing.

Nevertheless, claimant repeats her assertion that the ALJ failed to properly recognize that she suffers from complex regional pain syndrome and challenges the ALJ's determination that she retained the capacity to perform a range of light work. Specifically, claimant takes issue with the weight the ALJ

9

ascribed to the testimony of various medical opinions in the record.

Claimant's medical history is fairly lengthy and the administrative record is substantial (at more than 1,600 pages). But, claimant focuses almost exclusively on the opinions rendered by two medical professionals: (1) Ira Parsons, M.D., claimant's treating surgeon; and (2) John F. Kwock, M.D., the non-examining orthopedic surgeon who testified at the administrative hearing as a medical expert. In claimant's brief argument, which is set forth almost entirely in four paragraphs, she asserts that:

> The ALJ relied on the opinion of Dr. Kwok [sic] in finding that the Plaintiff did not have complex regional pain syndrome or some variant thereof (AR at 1279). Of note, Dr. Kwok testified that during the course of his entire career, he had NEVER (emphasis added) diagnosed a patient with complex regional pain syndrome (AR at 1340). That despite having several patients whose pain he could not determine any other explanation for (AR at 1340, 1341).
>
> The medical expert was also not familiar with the diagnosis provided by the Plaintiff's treating surgeon Ira Parsons, MD of "failure in situ" with regard to her right rotator cuff being structurally intact but permanently functionally deficient (AR at 1336, 1337, 1573).
>
> All of the medical providers who actually examined the Plaintiff noted her pain level and the difficulty she had with movement of the right upper extremity (AR at 238, 904, 932). The ALJ appears to have afforded lesser weight to the opinion of Ira Parsons, MD

10

because he was advocating on behalf of the Plaintiff being found eligible for disability benefits (AR at 1282, 1332, 1333). Sustaining such Helleresque logic would be contrary to public policy, where the opinion of a medical care provider with an extensive history with their patient proffers evidence of the disability is discounted because it argues too strongly in favor of disability.

At the hearing the Plaintiff testified that: she had trouble performing fine motor skills with her dominate hand; trouble writing; trouble lifting; problems doing basic household activities/chores; limitations in her range of motion; and challenges with some self-care activities (AR at 1309, 1313, 1314, 1315).

Claimant's Memorandum (document no. 10-1) at 4. Claimant then concludes by asserting that, "The decision of the ALJ that the Plaintiff could engage in a limited range of light duty work is not supported by substantial evidence." Id. The court disagrees.

No one doubts that claimant suffers from chronic shoulder pain. The question presented is whether the ALJ sustainably concluded that claimant's pain did not preclude her from engaging in her past relevant work. On that subject, the professional opinions of Dr. Parsons and Dr. Kwock were, to be sure, differing. But, the ALJ more than adequately explained her decision to afford Dr. Kwock's opinions greater weight than those of Dr. Parsons. See generally Admin. Rec. at 1282-83. First, she noted that several of Dr. Parsons' opinions are not

11

supported by objective testing or observation and, instead, rely largely on claimant's subjective reports of discomfort. The ALJ also noted inconsistencies in Dr. Parsons' opinions including, for example, his various views on whether claimant suffered from any limitations in her ability to stand/walk during the workday. Compare Admin. Rec. at 904-909, Medical Source Statement of Ability to do Work-Related Activities dated 2/3/12 (opining that claimant could walk a block at a reasonable pace and perform activities like shopping, and acknowledging that claimant's "lower extremities [are] not involved," but opining that she could stand or walk for only two hours during an 8-hour workday) with Id. at 1596-1601, Medical Source Statement of Ability to do Work-Related Activities dated 12/2/16 (opining that limitations on claimant's ability to sit/stand/walk during the workday were "not applicable").[1]

The ALJ also shared Dr. Kwock's opinion that Dr. Parsons had become somewhat invested in claimant's efforts to secure DIB benefits. See Admin Rec. at 1283 (acknowledging Dr. Kwock's "impression that Dr. Parsons has transcended to the role of

_____

[1] As claimant notes, Dr. Kwock was not provided with a copy of Dr. Parson's 2016 Medical Source Statement. But, the opinions contained in that statement were reported nearly two years after claimant's date last insured. And, as importantly, claimant has not shown that she suffered any prejudice from Dr. Kwock's inability to review those opinions.

12

advocate for [claimant]"). <u>See also</u> <u>Id</u>. at 1332-33 (Dr. Kwock's explanation for the basis of that opinion).

Additionally, the ALJ found persuasive Dr. Kwock's observation that even prior to claimant's first shoulder surgery, radiological studies showed "very little pathology." And, Dr. Kwock noted that following that first surgery, there was "<u>no</u> evidence of pathology." <u>Id</u>. at 1335 (emphasis supplied). <u>See also</u> <u>Id</u>. ("And so, from my reading of the record, there was little pathology to begin with. There appears to have been no complications as far as these operative procedures are concerned. Even the operating surgeon, at this point, will say that, as far as he is concerned, he feels that the operative results are adequate and he is at a loss to explain the continuous symptoms."). <u>See generally</u> Admin. Rec. at 937-38, Referral Letter from Dr. Parsons to Dr. Warner dated March 14, 2012 (outlining claimant's history of medical and surgical treatments, noting that lack of any pathology, and stating that "I am hard pressed to explain her pain.").

Turning to claimant's assertion that she suffers from complex regional pain syndrome, the ALJ found persuasive Dr. Kwock's rebuttal of Dr. Parson's opinion that claimant suffers from that condition. <u>See</u> Admin. Rec. at 1328-29, 1340-50

13

(discussing, in detail, the criteria established by the American College of Rheumatology for making a diagnosis of complex regional pain syndrome and explaining why he believes that claimant's chronic shoulder pain and possible shoulder swelling are, standing alone, insufficient to meet the diagnostic criteria).  As noted in a Social Security Ruling on this topic, a diagnosis of complex regional pain syndrome typically follows when a patient presents with at least some <u>objective medical signs or symptoms</u>:

> A diagnosis of RSDS/CRPS requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region.  The complaints of pain are associated with:
>
>> Swelling;
>>
>> Autonomic instability - seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);
>>
>> Abnormal hair or nail growth (growth can be either too slow or too fast);
>>
>> Osteoporosis; or
>>
>> Involuntary movements of the affected region of the initial injury.
>
> Progression of the clinical disorder is marked by worsening of a previously identified finding, or the manifestation of additional abnormal changes in the skin, nails, muscles, joints, ligaments, and bones of the affected region.

14

Titles II & XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Reg'l Pain Syndrome, SSR 03-2P (S.S.A. Oct. 20, 2003).

Here, the ALJ found persuasive Dr. Kwock's opinion that "outside of the very subjective complaints, such as weakness, the pain, things that cannot be measured or observed, we don't have any observable changes, the documentable changes to make this diagnosis." Id. at 1345. See also Id. at 1343-44 (summarizing the criteria generally accepted for a diagnosis of complex regional pain syndrome – almost all of which are absent from the record, except claimant's subjective complaints).

Finally, although not argued by claimant, the court notes that the ALJ adequately explained her decision to afford "significant weight" to the opinions of Dr. Salt (the non-examining psychologist) and, to a limited extent, those of Jonathan Jaffe, M.D. (the non-examining state agency physician). Similarly, she adequately explained her decision to afford less weight to the other medical opinions in the record – including those of Dr. Parsons. See Admin. Rec. at 1282-83.

Here, as in so many Social Security appeals, there is medical evidence in the record both supporting and undermining

15

claimant's asserted disability.  On balance, however, there is more than adequate evidence to sustain the ALJ's adverse disability determination.

## Conclusion

Judicial review of the ALJ's decision is both limited and deferential.  This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services,

647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and the claimant, the court concludes that there plainly is substantial evidence in the record to support the ALJ's determination that claimant was not disabled, as that term is used in the Act, at any time prior to her date last insured (December 31, 2014). The ALJ's determination of claimant's RFC (as fully supported by Dr. Kwock's testimony, see Admin. Rec. at 1329-31), her stated reasons for crediting some medical opinions while discounting others, and her analysis of claimant's subjective allegations of disabling symptoms are well-reasoned and supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (**document no. 10**) is denied, and the Commissioner's motion to affirm her decision (**document no. 12**) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

17

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 11, 2022

cc: Counsel of Record